## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 09 2018, 8:56 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANTS

Cody Cogswell
Fishers, Indiana

ATTORNEYS FOR APPELLEES

John T. Wilson
Jeffrey A. Lockwood
Anderson, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Matter of the Guardianship of Cor.G. and Col.G, | July 9, 2018 |
| William Tankersley and Mona Tankersley, | Court of Appeals Case No. 48A02-1711-GU-2676 |
| *Appellants-Petitioners,* | Appeal from the Madison Circuit Court |
| v. | The Honorable Thomas Newman, Jr., Judge |
| Gregory Greer (Father) and Shelly Brewer (Mother), | The Honorable Christopher A. Cage, Commissioner |
| *Respondents,* | Trial Court Cause Nos. 48C03-1608-GU-452, -453 |
| and | |
| Tony Greer and Rebecca Greer, | |
| *Appellees-Intervenors* | |

**Crone, Judge.**

# Case Summary

[1] William and Mona Tankersley ("Maternal Grandparents") appeal the trial court's order correcting a prior order regarding visitation with their grandchildren, ten-year-old Cor.G and twelve-year-old Col.G. (collectively "the Grandchildren"), who are under the guardianship of Troy and Rebecca Greer ("Paternal Grandparents"). They assert that the trial court abused its discretion in modifying its prior visitation order and in declining their request to hold Paternal Grandparents in contempt. Finding no abuse of discretion, we affirm.

# Facts and Procedural History

[2] On August 23, 2016, Paternal Grandparents filed an emergency petition for guardianship and custody of the Grandchildren. According to their petition, Paternal Grandparents sought guardianship because the Grandchildren's natural parents have drug problems and "have both been found guilty of actively running a 'meth lab' on the property" where the Grandchildren were residing. Appellants' App. Vol. 2 at 37. They alleged that the Department of Child Services ("DCS") had been involved repeatedly with the natural parents, that the Grandchildren's living situation with the parents was "substantially dangerous," and that a guardianship was in the best interests of the Grandchildren. *Id*. at 36. On October 27, 2016, the trial court granted Paternal Grandparents temporary guardianship over the Grandchildren. On January 4, 2017, with consent of the Grandchildren's mother, Maternal Grandparents filed

a motion to intervene and a petition for guardianship of the Grandchildren. The trial court granted the motion to intervene and set the matter for a permanent guardianship hearing.

[3] The parties (including the Grandchildren's parents and DCS) appeared for a permanent guardianship hearing on January 26, 2017. During the hearing, the parties reached an agreement that was recited in open court and approved by the trial court. Per the agreement, Paternal Grandparents were awarded guardianship of the Grandchildren and Maternal Grandparents were granted visitation. Specifically, the agreed-upon visitation consisted of alternating weekends, and two three-hour midweek visits. The natural parents were allowed only supervised visitation until further order of the court, and DCS agreed to dismiss the related children in need of services ("CHINS") action that had been filed against the parents. The trial court directed Paternal Grandparents' attorney, Charles Bugby, to prepare a written order reflecting the parties' agreement. Bugby prepared an order that was signed by the trial court on February 7, 2017. In addition to the visitation agreed upon in open court, paragraph 11 of the order provided visitation time for Maternal Grandparents during the summer and holiday breaks in accordance with the Indiana Parenting Time Guidelines.

[4] Bugby withdrew as counsel for Paternal Grandparents on February 23, 2017. On April 21, 2017, Paternal Grandparents filed a pro se motion with the trial court alerting the court that its February 2017 order contained a visitation provision that "was not agreed to in court." *Id.* at 61. On May 11, 2017, the

Paternal Grandparents filed another pro se correspondence with the trial court alerting the court that although they were complying with the written visitation order and allowing Maternal Grandparents visitation that had never been agreed upon, there was substantial confusion and conflict between the parties because the visitation arrangement was more like a "divorce" arrangement instead of the intended "guardianship" arrangement. *Id*. at 62.

[5] On May 26, 2017, Maternal Grandparents filed a rule to show cause and request for attorney's fees against Paternal Grandparents alleging that they had denied them visitation on May 25, 2017, in violation of the written visitation order. The trial court set the matter for hearing and, in the meantime, ordered Paternal Grandparents to follow the court's visitation order. Thereafter, Paternal Grandparents filed a motion for relief from judgment or in the alternative to modify order granting grandparent visitation.

[6] The trial court held a hearing on all pending motions on June 21, 2017. On June 30, 2017, the trial court issued an order concluding in relevant part,

> [Paternal Grandparents] have raised an objection concerning the fact that they did not agree to holiday or summer visitation pursuant to the Indiana Parenting Time Guidelines at the hearing on January 26, 2017. Rather the first time they became aware of that provision in the written agreement was after the fact. Having reviewed the oral record of said hearing, the Court is inclined to agree.… No specific mention of those holidays or breaks were mentioned. Accordingly, the written order did not accurately reflect what was tendered to the Court orally in open Court. As such, the visitation order is required to be modified in order to

accurately reflect what was submitted and approved by the
Court.

Appealed Order at 3.  Therefore, the trial court struck paragraph 11 of the original visitation agreement and stated, "All other visitation shall remain as ordered." *Id*.  The trial court further concluded that Maternal Grandparents' "request for show cause and attorney fees is DENIED at this time." *Id.* (emphasis omitted).  Maternal Grandparents filed a motion to correct error which was subsequently denied by the trial court.  This appeal ensued.[1]

## Discussion and Decision

## Section 1 – The trial court did not abuse its discretion in correcting the visitation order to accurately reflect the parties' agreement.

[7]     Maternal Grandparents first argue that the trial court abused its discretion in modifying visitation absent a showing that such modification was in the best interests of the Grandchildren.  However, no modification of the agreed-upon visitation occurred.  Rather, the trial court essentially entered a nunc pro tunc order to correct its February 2017 written order to "accurately reflect what was submitted and approved by the Court."  Appealed Order at 3; *see Cotton v. State*, 658 N.E.2d 898, 900 (Ind. 1995) (a nunc pro tunc order is "an entry made now

---

[1] The Grandchildren's natural parents and original respondents in the guardianship proceedings, Gregory Greer and Shelly Brewer, did not file briefs on appeal.  However, we have included them on the caption page because pursuant to Indiana Appellate Rule 17(A), a party of record in the trial court shall be a party on appeal.

of something which was actually previously done, to have effect as of the former date.") (citation omitted). Maternal Grandparents have shown no abuse of discretion.

## Section 2 – The trial court did not abuse its discretion in denying the petition for contempt.

[8] Maternal Grandparents also argue that the trial court abused its discretion in declining to find Paternal Grandparents in contempt for restricting their visitation in violation of the written visitation order. Generally, the determination of whether a party is in contempt is a matter within the trial court's discretion, and we will reverse a trial court's decision in this regard only if we find that an abuse of that discretion has occurred. *Van Wieren v. Van Wieren*, 858 N.E.2d 216, 222-23 (Ind. Ct. App. 2006). "When reviewing a contempt order, we will neither reweigh the evidence nor judge the credibility of witnesses." *Id.* at 223. "Crucial to the determination of contempt is the evaluation of a person's state of mind, that is, whether the alleged contemptuous conduct was done willfully." *Steele-Giri v. Steele*, 51 N.E.3d 119, 129 (Ind. 2016) (citation omitted).

[9] Paternal Grandparents conceded that they did restrict some visitation, but they testified unequivocally that it was never their intent to deprive Maternal Grandparents of visitation with the Grandchildren. They explained that any restrictions were minimal, and that such restrictions were mainly due to the confusion caused by the fact that the written visitation order did not accurately reflect what they had agreed to in open court. Paternal Grandfather further

explained that his son (the Grandchildrens' father) had threatened his life and that because Maternal Grandparents had been allowing his son to see the Grandchildren during their visitation time, Paternal Grandfather was concerned for the Grandchildren's safety and so he briefly halted visitation until a hearing could be held. Maternal Grandmother testified that she understood why Paternal Grandparents would have wanted to restrict visitation under the circumstances.

[10] The trial court, who saw the witnesses and heard their impassioned testimony, declined to find the conduct of Paternal Grandparents to be willfully contemptuous under the circumstances. However, the court warned that "any further denials of visitation may result in the imposition of fees." Appealed Order at 4. This was a reasonable exercise of discretion, and we reject Maternal Grandparents' invitation to reweigh the evidence and substitute our judgment for that of the trial court. The trial court did not abuse its discretion in declining to find Paternal Grandparents in contempt. The judgment of the trial court is affirmed.

[11] Affirmed.

Bailey, J., and Brown, J., concur.